UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| IMG UNIVERSE, LLC | : | Civil Action No. 1:17-cv-3673 |
| Plaintiff, | : | |
| v. | : | **COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF** |
| DIAMONDS INTERNATIONAL CORPORATION, A.S. | : | |
| Defendant. | : | **JURY TRIAL DEMANDED** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff IMG Universe ("Miss Universe"), for its complaint against Defendant Diamonds International Corporation ("DIC"), states as follows:

1.      This is an action to seek redress for misuse of the Miss Universe name, and to collect associated damages for DIC's complete breach of a ten-year sponsorship and licensing contract.  Even after it repudiated the parties' agreement, causing Miss Universe millions of dollars in damages, DIC wrongfully continued to reap the benefit of its former relationship with the Miss Universe Pageant.

2.      That arrangement, while it was in effect, gave DIC a strong and central association with the worldwide prestige of the Miss Universe name and some of its most iconic imagery.  DIC continued to seize that benefit while refusing to live up to its end of the bargain.

3.      As shown below, for many months after the relationship ended, DIC presented itself publicly as a "partner" associated with the Miss Universe Pageant; however, it no longer had the right to do so.

4.      In summer 2016, the license agreement was terminated due to DIC's total failure to pay the $190,000 it promised as a sponsorship fee by March 1, 2016.

5.      This was not DIC's first breach of the parties' contract.  For several years after it became Miss Universe's Crown Sponsor, DIC provided only begrudging performance under the contract, and failed to deliver many of the items and services that it was required to provide as a sponsor on a regular basis.

6.      Nonetheless, DIC was allowed over several years to publicize the fact that it had provided the Miss Universe crown, and continued to reap massive publicity from that fact.

7.      The titleholder's crown is a central image associated with Miss Universe — part of its distinctive logo — and DIC proudly informed the world that its design of the physical crown, placed on the titleholder's head at the culmination of each pageant, "was designed to blend the Czech roots of D.I.C. with the beautiful skyline of New York City, home of the Miss Universe Organization and its title holders."

8.      Even as it provided far less than it promised in the parties' contract, DIC as Crown Sponsor promoted itself worldwide as a central partner to the world's most famous beauty pageant and the creator of its iconic central object.  As a result, the world's most visible crown was tightly linked with the promotion of DIC's worldwide jewelry and gem business.

9.      In 2015 and 2016, DIC experienced financial problems.

10.     DIC's Chairman attributed the difficulty to DIC's attempt to finance the construction of a five-star luxury hotel under its name on an artificial island in Dubai.

11.     Unable to manage its own budgets, DIC stopped making the sponsorship payments it was required to make as part of the parties' long-term agreement.

12.     Miss Universe patiently waited many months for the overdue payments, but DIC dropped out of contact and defaulted on its obligation.

13.     Despite the ensuing termination of the contract, DIC continued to feature Miss Universe's distinctive trademarks prominently on its website, deceiving the public and violating the parties' agreement.

14.     Such conduct should be enjoined to prevent DIC from deceptively linking its name with Miss Universe, and Miss Universe should be awarded the monetary benefit of the broken contract, which DIC broke unilaterally without any excuse.

## Parties, Jurisdiction, and Venue

15.     Miss Universe incorporates the above allegations as if rewritten here.

16.     This is an action for breach of contract under New York law; for federal trademark infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); for federal unfair competition under § 43(a) of the Lanham Act (using a false designation of affiliation under 15 U.S.C. § 1125(a)(1)(A)); for a violation of the New York Deceptive Trade Practices Act, N.Y. GBL § 349; and for unfair competition under New York common law.

17.     IMG Universe, LLC, d/b/a Miss Universe Organization, (hereinafter "Miss Universe") is a Delaware limited-liability company with its principal place of business in New York City, New York.  It is in the business of producing the internationally-recognized Miss Universe, Miss USA, and Miss Teen USA competitions (the "Pageants," and each a "Pageant").

18.     Miss Universe is the successor-in-interest to Miss Universe L.P., L.L.P., which was a signatory to the Sponsorship Agreement attached hereto as Exhibit A.

19.     Miss Universe is informed and believes, and therefore alleges, that DIC is a Czech company, with its principal place of business in or near Prague in the Czech Republic.

20. Miss Universe is informed and believes, and therefore alleges, DIC is an international gem distributor.

21. DIC is a signatory to the Sponsorship Agreement, which was signed by its Chairman Lubos Riha in person in New York City on July 24, 2014.

22. This Court has subject-matter jurisdiction over this matter without regard to the amount in controversy, pursuant to 28 U.S.C. §§ 1331, 1338 & 1367 and 15 U.S.C. § 1121(a).

23. The Court has personal jurisdiction over the parties pursuant to N.Y. CPLR § 302(a) and by operation of ¶ 12(b) of the Agreement's Terms and Conditions: "All parties consent to the sole and exclusive personal jurisdiction and venue in the federal and state courts in the City and County of New York, New York […] for all litigation regarding the [Sponsorship] Agreement."

24. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2), because of the signing of the contract and obligations owed in this District, in light of ¶ 12(b) of the Agreement's Terms and Conditions: "All parties consent to […] venue in the federal and state courts in the City and County of New York, New York […] for all litigation regarding the [Sponsorship] Agreement."

## **Factual Background**

25. Miss Universe incorporates the above preliminary statements and allegations as if rewritten here.

26. Among many other Miss Universe-related trademark registrations, Miss Universe is the owner of U.S. Federal Trademark Registration No. 1,597,876 (the "'876 Registration") on the Principal Register for the mark **MISS UNIVERSE®** for use in connection with "entertainment services, namely, the presentation of pageants and contests" in International Class

41.  The '876 Registration validly issued to Miss Universe's predecessor-in-interest on May 22, 1990 and is based on a first use in interstate commerce in October 1950.  A true and accurate copy of the United States Patent and Trademark Office's record of this **MISS UNIVERSE®** trademark is attached hereto as Exhibit B.  The **MISS UNIVERSE®** trademark that is the subject of the '876 Registration has been used for over 66 years in connection with entertainment services promoted and marketed by Miss Universe.

27.     Among other Miss Universe-related registrations, Miss Universe is also the owner of Federal Trademark Registration No. 620,557 (the "'557 Registration") on the Principal Register for the mark **MISS UNIVERSE®** for use in connection with "[promoting the sale of goods and services by others through the medium of a beauty contest conducted on a national and regional basis]" in International Class 35.  The '557 Registration validly issued to Miss Universe's predecessor-in-interest on January 31, 1956 and is based on a first use in interstate commerce in January 1, 1950.  A true and accurate copy of the United States Patent and Trademark Office's record of this "Miss Universe" trademark is attached hereto as Exhibit C. The MISS UNIVERSE® trademark that is the subject of the '557 Registration has been used for over 66 years in connection with promoting the sale of goods and services by others through the medium of a beauty contest conducted on a national and regional basis.

28.     Miss Universe is also the owner of the Miss Universe Crown Design trademark.

29.     Collectively, these marks (the "Marks" or the **MISS UNIVERSE®** Marks) embody the goodwill in the name Miss Universe built over many decades, and have strength that has been acknowledged by several federal courts.

30.     Over the years, Miss Universe and its predecessor entities have spent millions of dollars advertising pageants and events identified by Marks.

31.     As  a result of the considerable time, effort, money, advertising and promotion of Marks and their widespread and extensive use by Miss Universe and its predecessor entities, the Marks have become widely and favorably known throughout the world to millions of consumers. They have come to serve as a unique identifier of the distinctive Pageant and Pageant-linked marketing opportunities associated only with Miss Universe.

32.     The Marks associated with the '876 and '557 Registrations are incontestable for purposes of 11 U.S.C. § 1065, i.e., they are conclusive evidence of Miss Universe's ownership of the Marks, the validity of the Marks and their associated registrations, and of Miss Universe's *exclusive* right to use the Marks in commerce on or in connection with entertainment services.

33.     Association with the **MISS UNIVERSE®** Marks, the Pageants, and the Miss Universe Organization is valuable for marketing purposes in a number of industries, and as a result many businesses contract with Miss Universe for licenses to use the name and be associated with the Pageants.

34.     In the summer of 2014, Defendant DIC entered into such a contract, the Sponsorship Agreement, in the offices of Miss Universe in New York City.

### The Contract

35.     Miss Universe incorporates the above preliminary statements and allegations as if rewritten here.

36.     Under the terms of the Sponsorship Agreement, DIC would be the Crown Sponsor for the Miss Universe Organization from 2015 through 2024.

37.     In exchange, in addition to providing Miss Universe's crown up front and cash payments every year, DIC would provide materials related to each and every Miss Universe, Miss USA, and Miss Teen USA Pageant during that period.

38.     In addition to the obligation to provide the articles in question, under ¶ 3(b)(x) of the Agreement, DIC acknowledged that "In the event any Article is not delivered in a timely fashion, [DIC] shall be liable to [Miss Universe] for any additional production costs or expenses incurred by Producer resulting from Sponsor's delay in delivering such Article."

39.     The Sponsorship Agreement was written to extend through December 31, 2024. (Ex. A ¶ 1.)

40.     Under the Sponsorship Agreement, DIC was given an extensive package of marketing and promotional opportunities and services that would associate it with the Miss Universe Pageant, and was afforded limited rights to link itself with Miss Universe during the term of the Agreement.   (*Id.* ¶ 2 *passim* (describing DIC's entitlement to an "Official Designation," promotional "Integration" with each Pageant program, "Event Tickets," "Program Book Advertisements," "Pageant Web Site Listing(s)" and "Link(s)," "Signage," "On-Site Promotional Event(s)," "Email Blast," "Product Sample" promotional rights, the right to conduct a "Promotional Sweepstakes," the right to arrange "Titleholder Personal Appearances," the right to broadcast a promotional "Web Site Video," a "Launch Event," limited use of "Photographs" of the Pageants and titleholders, and marketing access to "National Directors" of associated pageants.)

41.     DIC "acknowledge[d] that it has no right to use Sponsor's official sponsorship designation ***or any of the [Miss Universe] Marks*** except as set forth herein."   (*Id.* ¶ 2(a) (emphasis added); *see also* Terms and Conditions ¶ 3(a) ("Sponsor shall have no right to utilize any Producer [Miss Universe] Marks, except as otherwise expressly set forth in the Agreement or pre-approved by the Producer in writing.").)

42.     The rights and opportunities accruing to DIC as a sponsor were extended in exchange for its performance of a variety of duties, including the provision of certain articles and services in connection with each Miss USA, Miss Teen USA, and Miss Universe Pageant through 2024 (Ex. A ¶¶ 3(b)(i)(1), 3(b)(viii), & 3(b)(xi)) and — crucially — annual payment of sponsorship money.

43.     Under ¶ 3(a) of the Sponsorship Agreement, DIC promised to pay Miss Universe $2.28 million over the life of the parties' relationship, with specified amounts due in January and March of each year.

44.     DIC was given no rights to use the Marks beyond the end of the Sponsorship Agreement term.  (*Id.* ¶ 2.)

### **DIC Defaults under the Contract and Abuses Pageant Trademarks**

45.     Miss Universe incorporates the above preliminary statements and allegations as if rewritten here.

46.     In almost every case, DIC failed to live up to its obligations related to the Pageants.  These failures, of which DIC was fully aware at each juncture, were catalogued in a letter sent to DIC on August 23, 2016.  (*See* Ex. E.)

47.     DIC was given opportunities to cure its nonperformance in each case and failed to do so.

48.     On January 1 and March 31, 2016, under ¶ 3(a)(ii) of the Sponsorship Agreement, DIC was obliged to pay Miss Universe $190,000 to maintain its status as the Crown Sponsor.

49.     DIC missed both payments.

50.     At around the same time, DIC's officials indicated that DIC would not be able to honor its commitments under the Sponsorship Agreements.

51.     On May 20, 2016, Miss Universe wrote to DIC to ask for the missing cash payment and adequate assurances of future performance, and to provide an opportunity to cure the default.  (*See* Ex. D.)

52.     DIC's chairman Lubos Riha responded with a letter in which he stated that DIC was in "financial crisis because of building-up a considerable … DIC resort in Dubai."

53.     Mr. Riha asked for three additional months to make the payments that were due at the beginning of 2016.

54.     No payment came.

55.     Three months later, having heard nothing else and received no payment, Miss Universe wrote to DIC and terminated the Sponsorship Agreement.  (*See* Ex. E.)

56.     In the letter of termination, Miss Universe made it clear that since the Sponsorship Agreement was ending, DIC no longer had the right to present itself as affiliated with Miss Universe or use the **MISS UNIVERSE®** Marks.  (*Id.*)

57.     Miss Universe requested that DIC remove the Marks from its public materials to prevent public confusion.  (*Id.*)

58.     Despite this request, DIC continued for at least six months to use **MISS UNIVERSE®** Marks on its website (which is accessible throughout the United States) and presents itself as affiliated with Miss Universe.

59.     In fact, the primary homepage for DIC, dicholdings.com, in February 2017 still maintained at the very top of the page a "Miss Universe" button, suggesting a strong affiliation between DIC and Miss Universe.  (*See* Ex. F.)

60.     Viewers who clicked the Miss Universe button in February 2017 were brought to a page hosted by DIC with information about the Miss Universe pageant, juxtaposing the DIC

logo with the Miss Universe trademark (*see* Ex. G), and including the Miss Universe Crown Design logo.  (*See* Ex. H.)

61.     Moreover, on the webpage associated with DIC's resort in Dubai, DIC identified itself throughout all of 2016 as "since 2014… the main partner of the worldwide Miss Universe Pageant, supplying diamond crowns to this and other beauty pageants, such as Miss USA and Miss Teen [sic]."  (*See* Ex. I.)

62.     The statement in Exhibit I was literally false.

63.     The use and presentation of the **MISS UNIVERSE®** Marks in Exhibits F, G, and H, and I indicated that DIC was associated with Miss Universe, and constituted a false description and representation of fact likely to cause confusion, to cause mistake, and to deceive consumers as to the affiliation, connection, or association" of Miss Universe with DIC, or as to the origin, sponsorship, or approval of DIC's goods/business practices by Miss Universe.

64.     The use and presentation of the **MISS UNIVERSE®** Marks by DIC have occurred in interstate commerce.

65.     Miss Universe was harmed by these misuses of its Marks, which were likely to create public confusion.

## COUNT ONE: BREACH OF CONTRACT

66.     Miss Universe  incorporates the above allegations and statements as if restated here.

67.     The Sponsorship Agreement, until it was terminated, was a valid and binding contract.

68.     Miss Universe substantially performed all its obligations under the Sponsorship Agreement.

69.     DIC had payment obligations under the Sponsorship Agreement that it failed to perform and refused to perform despite extended opportunities to cure provided by Miss Universe.

70.     In particular, DIC promised to pay $2,280,000 in cash under the Sponsorship Agreement, but in fact paid only $140,000.

71.     DIC had performance obligations in the past under the Sponsorship Agreement for goods and services that it refused to provide.

72.     DIC had performance obligations in the future under the Sponsorship Agreement. It indicated that it would not honor them, and refused to provide assurances of future performance despite a demand for such assurances from Miss Universe.

73.     DIC has repudiated its future payment obligations under the Sponsorship Agreements.

74.     Miss Universe has suffered and will suffer substantial monetary damages as a direct and proximate result of DIC's breaches as outlined above.

75.     Miss Universe mitigated its losses as required when it became clear that DIC was repudiating its obligations, and continues to seek to mitigate its losses.

76.     DIC is liable to Miss Universe for damages in an amount to be proven at trial, including lost cash payments of $190,000 for 2016 and $1,950,000 for coming contract years, plus interest calculated since March 31, 2016 and costs, less any offset of IMG's forgone expenses in providing sponsorship integrations.

## COUNT TWO: UNJUST ENRICHMENT
### (in the alternative to Count One)

77.     Miss Universe  incorporates the above allegations and statements as if restated here.

78.     DIC received significant value from Miss Universe's performance in providing a sponsorship platform and placement of DIC's brand and handiwork in connection with Miss Universe and its iconic images.

79.     In particular, the linkage of DIC's crown with the Miss Universe brand has lasting value that was reflected in the multimillion-dollar price the parties negotiated for a ten-year relationship.

80.     DIC continued to benefit from those sponsorship activities and linkages, in a way not contemplated by the parties' relationship, by presenting itself as affiliated with Miss Universe after the termination of the parties' relationship and without permission.

81.     DIC made no payment for any of the value it has derived from Miss Universe in calendar-year 2016 and early 2017, or for the long-term benefit it will derive from its association with the crown in 2014-15.

82.     DIC has received significant value from Miss Universe in the form of publicity, prestige, and goodwill, even though it was not paying Miss Universe as agreed and was on the verge of repudiating those obligations, and even after the relationship had ended.

83.     It would be unjust for DIC to retain the value it has received from Miss Universe's sponsorship affiliation, other services, and goodwill without compensation in 2016.

84.     DIC should be required to pay IMG the market value of its services and the value of that goodwill, in an amount to be proven at trial, well in excess of $100,000.

### COUNT THREE: UNFAIR COMPETITION
#### (15 U.S.C. § 1125(a)(1)(A))

85.      Miss Universe  incorporates the above allegations and statements as if restated here.

86.   In late 2016, DIC's descriptions, literal representations, and graphic representations on its website communicating that its business is affiliated with Miss Universe (including the use of a Miss Universe logo and repeated placement of Miss Universe's trademarked name throughout the sites, as set forth above), were false designations of origin or false or misleading descriptions or representations of fact likely to cause confusion, or to cause mistake, or to deceive (a) as to the affiliation, connection, or association of Plaintiffs with Defendants, and/or (b) as to the origin, sponsorship, or approval of Defendants' goods and business practices by Plaintiffs, in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. 1125(a)(1)(A).

87.   On information and belief, DIC's false designations of affiliation in commerce on its website and, on information and belief, through other media, have been willful and either have deceived, or were likely to deceive, a substantial portion of the intended audience for the Miss Universe Pageant and those who do business with Miss Universe as sponsors.

88.   DIC's false designations of affiliation and false or misleading descriptions of fact were material and likely to influence purchasing decisions for goods and services, including marketing opportunities provided by Miss Universe to its sponsors.

89.   Miss Universe has been injured as a result of the foregoing acts by a lessening of the goodwill that the **MISS UNIVERSE®** brand has with the buying public.

90.   DIC, by its aforesaid acts, has damaged Miss Universe and unlawfully derived profits and gains therefrom.

91.   By reason of the aforesaid unlawful false or misleading statements, DIC has caused and may at any time resume causing substantial and irreparable harm to Miss Universe and to the public for which there is no adequate remedy at law.  DIC has unjustifiably benefited

from said unlawful acts and will continue to carry out such unlawful conduct and be unjustly enriched unless enjoined by this Court.

92.     Pursuant to 15 U.S.C. §1117(a), Miss Universe prays for actual damages as a result of these deceptive practices, and disgorgement of any profits derived therefrom.

93.     Pursuant to 15 U.S.C. § 1117(b), Miss Universe prays for treble damages due to DIC's willful misuse of the Marks.

## COUNT FOUR: TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114(1))

94.     Miss Universe  incorporates the above allegations and statements as if restated here.

95.     DIC's use of the Marks in interstate commerce, including, without limitation, on its website, constitutes infringement of the **MISS UNIVERSE®** Marks, in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

96.     On information and belief, DIC's acts of infringement were deliberate, intentional and willful and have been committed with full knowledge of Miss Universe's trademark registrations related to pageants and pageant-related marketing.

97.     DIC's unauthorized use of the Marks caused Miss Universe substantial and irreparable injury by depriving Miss Universe of its right to determine the manner in which the Marks are represented to the general public through merchandising and marketing.

98.     Miss Universe was injured as a result of the foregoing acts, by lessening of the goodwill that the Marks enjoy with the buying public and with those who seek to market goods and services to them by associating themselves with Miss Universe.

99.     DIC has damaged Miss Universe and unlawfully derived profits and gains without compensating Miss Universe.

100.     By reason of the aforesaid unlawful acts of infringement, DIC has caused and will continue to cause substantial and irreparable harm to Miss Universe and to the public, for which there is no adequate remedy at law.  DIC has unjustifiably benefited from said unlawful acts and may at any time resume such unlawful conduct and be unjustly enriched unless enjoined by this Court.

## COUNT FIVE: TRADEMARK DILUTION
### (15 U.S.C. § 1125(c))

101.     Miss Universe  incorporates the above allegations and statements as if restated here.

102.     The **MISS UNIVERSE®** Marks are inherently distinctive and famous as a result of widespread use throughout the United States, and beyond, and are widely recognized by the general consuming public of the United States (and throughout the world) as a designation of source of Miss Universe's high quality Pageants and entertainment services.

103.     The **MISS UNIVERSE®** Marks are famous and distinctive, inherently or through acquired distinctiveness, in part, as the result of over 66 years' continuous use in connection with beauty pageants and entertainment services promoted and marketed by Miss Universe, as well as (1) Miss Universe's investment of hundreds of millions of dollars in advertising and promoting beauty pageants identified by the **MISS UNIVERSE®** Marks and (2) Miss Universe's aggregate sales of hundreds of millions of dollars of sponsorships and other products/services associated with the **MISS UNIVERSE®** Marks.

104.     The public associates and identifies the **MISS UNIVERSE®** Marks with Miss Universe.

105.     The **MISS UNIVERSE®** Marks were famous prior to DIC's use of "MISS UNIVERSE."

106.    DIC's continued use of the "MISS UNIVERSE" designation on its website, particularly since DIC's contract with Miss Universe has terminated and the continued use is without supervision by Miss Universe, was likely to cause dilution by tarnishment of Miss Universe's famous **MISS UNIVERSE®** Marks.

107.    By reason of the aforesaid acts, the association that arises in consumers' minds from DIC's illicit use of the "MISS UNIVERSE" designation on its website harms the reputation of the **MISS UNIVERSE®** Marks.

108.    DIC's use of the "MISS UNIVERSE" designation has eroded and diminished the goodwill that Miss Universe enjoys with the **MISS UNIVERSE®** Marks.  On information and belief, DIC's illicit activities have caused negative associations with the **MISS UNIVERSE®** Marks in the minds of consumers.

109.    DIC's aforesaid activities and use of "MISS UNIVERSE" in commerce on its website constitutes dilution by tarnishment of the famous **MISS UNIVERSE®** Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. 1125(c).

110.    On information and belief, DIC intended to cause dilution of, and tarnish, the **MISS UNIVERSE®** Marks.

111.    By reason of the aforesaid unlawful acts of trademark dilution, DIC has caused may resume causing substantial and irreparable harm to Miss Universe and to the public, for which there is no adequate remedy at law.  DIC has unjustifiably benefitted from said unlawful acts and may resume carrying out such unlawful conduct and being unjustly enriched unless enjoyed by this Court.

## COUNT SIX: UNFAIR COMPETITION
### (N.Y. common law and Gen.Bus.Law § 349)

112.    Miss Universe  incorporates the above allegations and statements as if restated here.

113.    The aforesaid conduct of DIC constitutes unfair competition under the common law of the State of New York and Gen. Bus. Law. § 349.

114.    On information and belief, DIC's acts of unfair competition have been willful.

115.    Miss Universe was injured as a result of the foregoing acts by causing Miss Universe to lose sponsorships or by lessening of the goodwill that Miss Universe pageants enjoy with the public.

116.    As a result of DIC's acts of unfair competition, DIC has caused substantial and irreparable harm to Miss Universe and to the public for which there is no adequate remedy at law.  DIC has unjustifiably benefitted from said unlawful acts and may resume carrying out such unlawful conduct and being unjustly enriched unless enjoined by this Court.

### Prayer for Relief

117.    In light of the above allegations, IMG  respectfully asks this Court to grant the following relief:

118.    Damages to be proven at trial on all counts, including pre- and post-judgment interest, costs incurred as a result of DIC's nonperformance under the Sponsorship Agreement, and promised contractual payments totaling $2,040,000;

119.    That in particular DIC be required, pursuant to 15 U.S.C. §1117(a), to pay Miss Universe the actual damages it has suffered as a result of Defendants' trademark infringement, trademark dilution, and deceptive practices, and disgorge any profits therefrom, and that DIC be

required, pursuant to 15 U.S.C. § 1117(b), to pay Miss Universe three times the amount of actual damages or profits suffered by them by virtue of the willful nature of DIC's illegal acts;

120.    That, pursuant to 15 U.S.C. § 1117(a) or New York law, the Court declare this an exceptional case and award Miss Universe its reasonable attorneys' fees;

121.    A declaration that DIC is bound by its contract payment promises, and that future payments under the Sponsorship Agreement shall be tendered by DIC on schedule, subject to any offsets, any forgone expenses for Miss Universe, and any mitigation that Miss Universe may accomplish;

122.    An injunction forbidding any resumption of misuse of Miss Universe's Marks in a manner likely to cause public confusion, and in particular mandating the removal of those Marks from DIC's various websites, which are accessible to consumers throughout the United States;

123.    Any other relief this Court deems just and proper, including an award of costs, interest, and attorney's fees under any applicable law.

Respectfully submitted,


*/s/ Daniel Meier*
DANIEL MEIER (DM-0328)
BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP
39 Broadway, 25th Floor
New York, NY  10006-3039
Telephone:  (646) 798-8901
Facsimile:  (646) 798-8902
dmeier@beneschlaw.com

JOSEPH A. CASTRODALE (*pro hac vice* to be filed)
GREGORY J. PHILLIPS (*pro hac vice* to be filed)
JAMES E. VON DER HEYDT (*pro hac vice* to be filed)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

18

200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone:  216.363.4500
Facsimile:  216.363.4588
Email:  jcastrodale@beneschlaw.com
gphillips@beneschlaw.com
dmeier@beneschlaw.com
jvonderheydt@beneschlaw.com

*Attorneys for Plaintiff IMG Universe, LLC*

**JURY DEMAND**

Plaintiff IMG Universe, LLC hereby respectfully demands a trial by jury on all issues so triable.


*/s/ Daniel Meier*

One of the Attorneys for Plaintiff IMG Universe, LLC